v. U.S. Department of Labor at all. May it please the Court, Your Honor, my name is Robert Marks. I argue on behalf of Petitioners Daisy Abdur-Rahman and Ryan Petty. We respectfully submit that a reasonable fee is not a fee that is six years old at the time of the fee petition, eight years old at the time of the fee award, ten years old at the time of the affirmance of the fee petition, fee award, or as of today, thirteen years old. And we have held and the Supreme Court has held that attorneys' fees should not be occasioned for a second litigation. And what is this, third, fourth litigation? I guess it is how you count them. But this is not the way the system is supposed to work. And that is not a criticism of you. I find some parts of the decisions that have been made against you on fees as baffling to be candid with you. And I will get into those when I hear from the Department and the government. But, yeah, this is just crazy, basically, some of the stuff. And that is just my view, pure my view, and I am using the colloquial term, crazy being wrong. I would agree with Your Honor. Let me ask you this. Is it clear that the law we apply to board decisions on attorneys' fees is the same law that the Supreme Court and we have announced and applied in Section 1988, federal statutory claims? Yes, we believe so. Okay. Okay. And we believe that by any decision of the Supreme Court or this Court and the set of law in this circuit, a reasonable fee is one that compensates for delay in payment by use of either current hourly rates at time of the award or use of historic rates with appropriate adjustment for the time delay. And when Justice Alito said especially where the defendant is at fault for the delay, what he meant was especially, not only when? Well, he actually said particularly, but I think he made it clear. First of all, our position is that the issue before the Court in Perdue v. Kenney was not about what we are looking for, which is just the general use of current rates or historic rates with adjustment to compensate for time delay, as the Court is aware. The issue in Perdue v. Kenney was a $4.5 million editor over the Lord's. I understand. But he also discussed how you, one of the reasons that the plaintiffs in that case argued for that enhancement was there has been a delay and he said no, wait, stop. Delay is compensated for either an adjustment of the historical rates by the Consumer Price Index or by current rates and in that case, it was the current rates, let's move on. We disregard your statement because you got current rates. You didn't get current rates, is your argument. No, and we raised the issue to the Administrative Law Judge, who waited 16 months after the fee application was fully briefed to deny the enhancement. We made the same argument to the ARB, who waited another 16 months to deny the enhancement. We've never been given any compensation which is provided for by the Supreme Court decisions. We're not looking for the enhancement. We're looking for just our compensation and a reasonable fee, which as you know, the position is current rate or historic rates with adjustment. That's all we're looking for. On that particular argument, you have some other arguments. Yes, we do. With respect to the actual Attorney Fee Award, our position is that the Administrative Law Judge was arbitrary, was capricious, across the board, refusal to compensate for legal research. Actually, legal research was compensated for some reason when I did it at 100%. We put this forward in our brief, for some reason compensated at only 50% when my partner did it, although we did the same legal research for both attorneys. As Judge Morgan knew, since he had tried the case, this is not a situation where there was a first chair, second chair. We each took separate witnesses. It's very clear that the breakneck pace of the depositions required us to each perform independently. I might add that what the court might not be aware of is the breakneck pace of the depositions was in part caused by the discovery abuses by DeKalb County, which forced everything to be backloaded. Why does that matter? What caused it? I mean . . . Well, it matters because we didn't have time to brief each other, except when I finished the deposition of John Walker at 10 o'clock in the evening, and my partner had to take Mr. Goodowitz's deposition at 10 o'clock in the morning, and then Judge Morgan doesn't compensate us for me briefing my partner in the car on the way, because that's all the time we had. That's arbitrary. Yes, but my suggestion to you, and I think some of this could have been done more simply, you don't have to impugn the other side's actions to say that there was such a breakneck pace of depositions, regardless of why, that we couldn't, didn't have time to brief each other, and the only way that my partner, in both sense of the word, could be briefed was to be there. I thought it was between the night before and the next morning, there's not enough time, awake time, to brief. I just would like to keep as much, it's their fault, their fault, out of it as possible, because I still call me an optimist, and I'm not called that often, hope that y'all can work this entire mess out, but we'll get to that later. Right now, we want to hear the arguments about the problems. Okay, Your Honor, and we agree. We just want reasonable compensation for the work performed. Thank you. All right. Mr. Gepp. Thank you, Your Honor. May it please the Court, I represent DeKalb County, and I'd like to first speak to the issue of the enhancement of the fee. The leading case, of course, is the Purdue case. Which enhancement are you talking about? In the enhancement of attorney's fees that the complainants are seeking, the fee counsel is seeking. I'm sorry. The one that is grounded on what fact? Delay in payment? Delay in payment. Okay. See, I don't really view that as an enhancement. Compare it to Kenny A. and Purdue. Dear gracious goodness, a 75 percent enhancement because you did a real good job in settling the case. As much as I love settlements, it's different from a delay in payment and how do we do it. What Alito said in that case for the majority was that we don't rule out extra enhancement for delay in all circumstances, but particularly where it's caused by the defendants. But the way that's usually handled is either current rates or you time adjust the rates over time using the consumer price index, which is much more complicated and subject to dispute. The current rates are close enough for government work and it saves everybody a lot of problems. He didn't say when he said particularly when caused by the defendants. He didn't say only when caused by the defendants. It's just not just and proper to pay somebody using old rates with no interest, no income or anything else all these years later. That sounds, shouts abuse of discretion to me. Well, the standard is abuse of discretion. Well, coincidentally then, I agree with them because it shouts it's an abuse of discretion to me. I'm just speaking for me. But, I mean, suppose this had gone on for 20 years and the hourly rate that you were I'm sorry, and the compensation you were giving them was worked out to be 70 cents on the dollar. Are you saying that's just their hard luck? No, Your Honor, we're not saying that. But what we're saying is that the guidance from Purdue is that you need something in addition to That's not what it says. It says how it's usually handled is this way, historical adjustment CPI or current rates. When there is an enhancement to be awarded and not in every case is an enhancement to be awarded. That's how it's usually handled when there has been significant delay. And there has been significant delay in this case. Not caused by the defense. Particularly when caused by the defense, not only when caused by the defense. There may be other circumstances. I agree with you, Your Honor. If I may quote you from the Gray v. Bostick case when it was remanded to the district court. You stated that we're remanded to see if this is one of those unusual cases in which an extraordinary outlay of expenses or conduct by defense How can you misread that case that badly? What UW Clemmon did in that case, which I've never seen done before, is he compensated them at current rates, which Purdue had just held was one way to take care of delay, fully take care of delay. And then he said, however, I don't think their current rates have kept up with inflation, so I'm going to give them a 15 percent boost over and beyond that. That's not what they're asking for in this case, and that's not what was rejected. They're just asking for current rates, not current rates plus 15 percent. Well, I agree that they're asking for current rates, and they're not asking for an enhancement. And you agree that in Bostick, Judge Clemmon gave the plaintiff's attorneys current rates plus 15 percent, and what we said was wrong was the plus 15 percent. Well, and also remanded it to the trial court to decide if the exceptional delay justified the enhancement. That's what the decision says. In our case here, Your Honor, the fee counsel began at a rate of $290 per hour. Along the way, each step of the way, they have been awarded higher rates of fees by the ALJ and the ARB. The current rate that they were awarded in the last decision is $450 per hour. That is a 175 percent increase over the rates they originally charged back when the case began. But the case began 10 plus years ago. Yes. So, you're questioning that delta in the rates over the course of 10 years in Atlanta? Yes. The consumer price index during that period of time only went up by 17 and a half percent. Suppose your client told you, we need your work, we value your work, we really like you, we'll pay you in 10 years at your current rates. How happy would you be? Well, of course, you don't want that to happen. But Purdue and Bostick both say that counsel who accept these cases understand that there is going to be a delay in payment. If you go before the ARB . . . And the way we ordinarily handle it is by paying them in current rates. Let's move on to another thing. I was shocked, shocked I say, to hear that the Board's precedent doesn't compensate for review and revision of briefs and pleadings and memoranda. So you can't spend any time . . . first draft is it? No, I don't believe that's what the Board said, Your Honor. I think the ALJ went through all the hours. The initial fee request was for $512,000. The ALJ went through and said, these are areas where we should cut, and the ALJ cut various things from multiple reviews of briefs, multiple attorneys at depositions, conferencing . . . No, they billed for reviewing and revising. And they did that too. And the ALJ turned it down because under Board precedent, you can't be compensated for any time for reviewing and revising. And I understood the justification to be that in private practice, you don't get any time for reviewing and revising. You've got to go with the first draft. I don't believe that's . . . Now, revising isn't discussing it with your co-counsel. No, but I believe there were . . . at one point, the ALJ mentioned that there were like six or eight revisions of the briefs. And the ALJ found that the work that was put in was excessive. And so he awarded them how much time for revising? I don't recall, Your Honor. I thought the time was zero. That's the way they argued. I don't believe it was zero. So you would agree that they're entitled to some compensation for time spent revising briefs, but that they're not entitled to an endless amount. And what the ALJ said was, I will give them a reasonable amount of time for revising, but not unlimited. I believe that's correct, Your Honor. That's what we would argue. We would also argue that the ALJ looked at the total body of work and decided that there were cuts that needed to be made. There was even, at one point, an instance where a fee counsel billed 23 hours in a day. And the ALJ didn't credit them all that time. For both counsel or just for one? I believe it was both counsel that worked over 23 hours in a day. I'm sorry. Both counsel when totaled together? No, 23 hours per counsel. So, the ALJ's, the trial court in this case, and the ALJ is the one who does look at all these things particularly, and does decide, and the standard for review is abuse of discretion. How is it not abuse of discretion to determine that legal research done by Mrs. Marks is going to be compensated at 50 percent? I understand that paralegal research is appropriate on certain things, but certainly attorneys, I'm sure you will acknowledge, do legal research and analysis. So how is this, besides arbitrarily assigning it, the discount to her, other than that, how is this determined that the research she was doing at that time was paralegal research? There was a considerable amount of research done. It wasn't based on sex. It was based on the judge's view of what needed to be done. I'm not suggesting it's based on sex. I never said that. It seems somewhat arbitrary to determine one person, male or female, an attorney who's doing legal research without understanding what the research is and why that cut was made. So that's what I'm trying to get at, is what was the research and why was it cut? I don't recall what the specific research was. There were several areas where research was reduced, but the fee counsel was compensated for, by and large, most of the research that it did. The original fee request was $512,000 and the ALJ awarded $396,000 of it. Various things were cut. This is a two-person firm and the rates charged all the way through are the rates of the attorneys. They're both partners. They don't have first-year associates that you would have do research or revisions or digesting transcripts at a lesser rate. They're charging $450 or $400 for that kind of work. I think the ALJ recognized that and reduced the research, particularly where he thought it was excessive or it was work that could . . . If he had said that, he or she had said that, the ALJ had said that, they're entitled to compensation for their hours of research reasonably conducted. That's one thing. But that's not what the ALJ said. The ALJ said research is done by paralegals, not attorneys, therefore, I'm going to reduce it. That's what he said or she said. It's a he and I believe that that is something he said at one point, but that's not researched through the whole case. I think that the writing of the briefs and the revisions of the briefs were reviewed by the ALJ. It's a very detailed decision going through . . . it's probably ten or more pages going through various entries and analyzing board precedent and what he is going to allow and what he thinks is excessive. And that is entitled to an abusive discretion review. Let me ask you about another item that's included in here. Is it accurate to say that the ALJ and the ARB didn't award any compensation for work that was done before 2010 when they got the decision reversed? No. The ALJ awarded compensation from the inception of the case all the way through. The second appeal was work done before the ARB, which was only work done before the ARB, which the ARB determined the fees on. The fee request was $53,000 at a rate I believe it was $450 an hour and the ARB awarded all of that. So this issue is wrong?  The issue . . . I'm sorry, Your Honor. The issue reads, based their compensation decision on a finding that complainants did not prevail until 2010. They raised that argument as a reason that the ALJ committed error in his decision of not enhancing the fee award. The ALJ mentioned several factors of why the fee wasn't enhanced. One was it's a public entity. One was that there was nothing exceptional in this case. And one was . . . And enhanced. He raised those points as the reason why they weren't paid at current rates to make up for the delay. Okay. So you're not arguing that they're not entitled to compensation before they finally got it reversed? No, sir. We're not. They're entitled to compensation from the inception of the case. We would argue that, number one, that the enhancement is improper. But if there is an enhancement, since they have been paid, starting at $290 an hour up to $450, that the best way of doing any enhancement would be the Consumer Price Index, which both the Basta case and, of course, Purdue say is one way of doing it. You said they've been paid? I'm sorry? You just said they've been paid. No. They're entitled to payment. They haven't been paid yet. Not a penny. Well, no. They haven't been paid anything because the fee issue hasn't been decided. And, again, they're not asking for an enhancement. You're arguing against their ability to get current rates. Yes. Okay. How much do you concede they are entitled to be paid? Dollars and cents, round off, round up, round down, whatever. They're entitled to something. You wouldn't just tell them, oh, nothing. How much? We, the county, would concede that the amounts awarded so far should be affirmed. All right. So why shouldn't we order that they be paid that amount now and we'll quibble and quarrel about the rest of it later and we stop the clock running on CPI adjustments and so forth? What's wrong with that? Interim relief. Extraordinary circumstances. Well, if we could end this case, that would be very good. Well, I'm trying to end part of it up to that amount. Yeah. The amount that has been awarded, we have argued in our brief, exceeds what was submitted as evidence in the case. But you just conceded that they ought to be paid at least that much, didn't you? What I'm conceding is that we want this case over, that we believe this court could look at the rates that have been awarded and how they were awarded based on the surveys and use its own experience and the record evidence . . . I am asking you, you've got to concede they're entitled to more than $1,000, right? They're entitled to, yes. All right. More than $100,000, right? Yes, they're entitled . . . More than $200,000, right? Yes. Okay. Why don't we order that they be paid immediately $200,000 and then we'll work out the details on how much above that, if any? That could have been a solution along the way. I'm talking about now. I suppose you could do that, Your Honor. Yes. I issued a decision one time, an opinion, a case involving the death of a little girl at a, not really death, permanent disability, a little girl at an Air Force hospital. They were quarreling and quarreled in and out of the courts and so forth about the amount while this little girl lay in a near vegetative state. We entered an interim order in that case requiring the Air Force to pay what it conceded it owed and then on remand, the district court could take it from there and work out the other details. I don't remember the name of the case, but I remembered in the course of the opinion, I used the phrase or the words mumbo-jumbo, so it's very easy to find. I'm asking you if there's any reason we shouldn't do that here. I just think it's unjust to keep telling these people you can't get anything because we don't agree exactly how much you're to get. Your Honor, with all due respect, we have probably had three mediations on this case already. The county's position now and has been let's get it resolved. We have not been able to come to a resolution. If the court says yes, we can see, as you suggest, that there's more than $200,000 owed. There's more than $400,000 owed. Along the way, neither the ALJ, the ARB, or anyone else has said let's pay this amount. The county was ordered to back pay to the two claimants while the case was on appeal and to reinstate them. The county did that. We're past that. I know, but I raise that just to show that the county is trying to do what's right. We have not been able to reach a solution. Do I read your briefs correctly? Both sides are asking this court to go ahead and decide the case? Yes. Not to remand it to the board? Yes, because the attorney's fees have been briefed eight times already in this case, Your Honor. We don't need to do it one more time. We want this case over. We would like to have an order from this court saying this is what it is and parties, you live with it. Of course, we don't think enhancement should be awarded and if there's any increase, it should be based on the 17.5% CPI, which would erase their initial rates from $290 an hour to $345 and not the $450 or $500 they're seeking today. Okay. Let's hear from the department. Thank you. Mr. Grauman. Good morning. May it please the court. My name is Jesse Grauman and I represent the United States Department of Labor. We are seeking affirmance of the agency's awards in substantial part except for the 2010 rate, which we conceded was an inadvertent error that should be corrected. 1882.50? Something, yes. More or less? Yes. I may have misread it. Does the board have precedent that review and revision time will not be compensated? I believe that is the precedent that was relied on in this case, yes. How can that possibly be? I think with regard to that, I think maybe without looking too closely at that particular precedent but looking at how it was applied in this case. I think underlying, and as Mr. Geb I think alluded to towards the end of his presentation, underlying all of the reductions and perhaps the rates as well, but especially the reductions is the billing judgment principle. Why didn't you say that? I think it certainly would have been helpful had the ALJ said that. I know, but why is it an abuse of discretion to base it on the wrong reason? I think we need to look holistically at the decision and I think what the ALJ saw was we have this law firm, this small law firm that obtained, we don't dispute, excellent results for their clients and provided extremely excellent representation, but by the same I understand they should have been able to do the review and revision in fewer hours than they did, but that is not what the board said or the ALJ blended together said. I thought they said we don't pay for review and revision because it is not paid for in the private sector. I think that is what he said about conferencing, that it is not paid in the private sector. I don't dispute that in this case. So that is error. I think it is still a matter within the board and within the agency's discretion how much to compensate for a particular task. Could have reached the same conclusion by correct reasoning and the exercise of correct discretion, but didn't. Again, I think we just need to look at what happened here. I agree with Your Honor that the rationale here was we are not going to compensate for review and revision, but I think under the circumstances of this case where you have partners billing partner rates for all of the tasks, I think it wasn't unreasonable. It wasn't an abusive discretion. They could have made the same reduction for the right reason, but they made it for the wrong reason. We have precedent neck high saying that that is an abusive discretion. I think it could have been made for a different reason. I guess I wouldn't concede that it was right versus wrong. I think that, again, under the circumstances You would concede that denying something for the wrong reason is wrong, wouldn't you? Yes, but I think to the extent that it would be deemed to be harmless error or not substantial error in this case, the board's decision on that can still be affirmed. Yes, but the board could have granted all of those hours without abusing its discretion. Could it not have? The board could have reached the same number through different rationale. But it could have given more without abusing discretion. Yes. So we don't know whether the board would have done that if it had applied the correct factors or not. All we know is the board denied it, denied the full amount using the wrong reason. And we can't affirm because we think, well, the board could have denied it for another reason if it just hadn't erroneously concluded that it was denying it for that reason. We don't know. If told, no, you can't disallow review and revision. We don't know what the board would have done. It's true. We don't know exactly what the board would have done. Again, I would just, you know, without belaboring the point, I think simply that in the circumstances of this case, it wasn't unreasonable for the board to do what it did with regard to review and revision given the partner rates that were being charged. Have you been in on any of the mediation? I'm sorry? Has the department been in on any of the mediation? I don't believe, I certainly personally haven't been. The department really doesn't have any interest in the final monetary exchange. That's correct. The department has an interest in ensuring that the discretion of the ALJ and the board are respected and that the board's decisions are upheld. But ultimately, the department is something of a neutral party in the actual financial dispute. Just moving now for a second. What about the conferencing? That was something that the ALJ said would not be compensated because in the real world it's not paid for. What if we find that that's incorrect? I mean, certainly in the insurance defense world, I would agree with you, but I don't know where conferences aren't paid for. I think this may fall into the category of what we're talking about before. Excessive conferencing, so it might deserve a cut, but saying that it's not paid for in the real world, I dispute that that's correct. I think the issues with conferencing really are, as Your Honor implied, analogous to the issues of review and revision. Yes, the ALJ did say we're not awarding conferencing time because it's not paid for in the private sector. And as Your Honor implied, at least in some elements of the private sector, that's accurate. And so we would submit that to the extent that that is accurate, at least in some elements of the private sector, it was within the ALJ's discretion to make that determination within the Board's discretion to affirm it. Again, that being said, I think we would concede that that's at least under some circumstances conferencing may be compensable. But again, under the circumstances of this case where, again, you have two very experienced partners, charging rates commensurate with that experience, it was not an abuse of discretion for the ALJ to conclude that the principle of billing judgments would dictate that conferencing not be compensated. So those two issues may rise and fall together. I think it's fair to say that, yes. What about two attorneys present at depositions when the depositions are scheduled so closely together that there's not adequate time to tell the second attorney before the next scheduled deposition, this is what Witness A said, this is that, you need to push them on this point, be careful about that point, and so forth. Again, I think when, to the extent, I think, as to the factual question as to was there adequate time in between the depositions for one attorney to brief the other, I'm not 100 percent certain whether there was, as a matter of law, inadequate time. Again, I think when you have, again, only two attorneys, both billing partner rates, I don't know that it's reasonable, or I should say I don't know that it's unreasonable for the ALJ and the boards who have said we're not going to compensate both attorneys when one attorney is merely attending the deposition and the other attorney is the one actively taking the deposition. Why, what's the precedent that says there should be a difference if it's a small law firm and they're both partners? I don't know that there's precedent specifically on that point, but I think that the overall principle is that the rate that should be awarded should be a reasonable rate that is supported by the market, and at least in this case, to the extent that, again, that a small law firm doesn't have the resources of a law firm to assign certain tasks to attorneys or even support staff who might earn a lower rate, I think it's not unreasonable for an administrative law judge to say that attorneys shouldn't be compensated at their full rate all of the time because under circumstances that were exactly the same . . . Because they only have two lawyers instead of 20. Right, and whether they should be compensated for a particular task simply because they didn't have a lower paid attorney to assign that to, I think it was within the ALJ's discretion to say we're not going to compensate an attorney at a partner rate simply because they didn't have an associate or a paralegal. And you do recognize that in the private practice world, there are depositions that warrant the attendance of more than one attorney, sometimes more than one partner, particularly in a complex case. And again, here we have a situation where the ALJ has sort of across the board said no rather than saying, okay, this was a particularly . . . maybe an expert witness deposition would qualify for two to attend. There doesn't seem to be that looking into the particulars. And I would submit there that that's where the abusive discretion standard comes in. I think the abusive discretion standard applies to these sorts of decisions because the ALJ is the one who presided over this case. He was certainly familiar with, intimately familiar with the case itself, with the level of complexity. And I think his decisions, we can presume that his decisions were informed by his familiarity with the case. And that's why, while there are certainly issues across the board on which reasonable minds could disagree, I think the abusive discretion standard counsels a level of deference to the ALJ. It gets you very far. But again, these issues may all rise and fall together if all of the reasons are incorrect. On the reductions, I think, again, I think the overall motivating principle behind the reductions was billing judgments. And so, you know, obviously to the extent that the court concludes that the ALJ was simply wrong, then they may well rise and fall together. Just in the very limited amount of time, just I think both parties have litigated the or have discussed the enhancements or current rate compensation. Just very briefly, I think what was motivating the ALJ and ARB, they were in good faith trying to read both the Supreme Court's decision in Purdue and this Court's decision in Gray. And in particular, the language in Gray, although not quoted by the ALJ and ARB below, that essentially this Court needs to revisit or view its prior cases, such as Norman and others, in light of the Supreme Court's direction in Purdue, I think is what may have informed the ALJ and ARB's decisions in this case, which was to conclude that only extraordinary circumstances warrant the application of current rates. And so I think that the Department was trying to apply Purdue, it was trying to apply Gray, and we would submit that it was within their discretion to interpret this case. If that's a reasonable inference of Bostick, I fault the author of the Bostick opinion for not being clear because that certainly is not a fair, I believe, a fair interpretation of Kinnear versus Purdue. Let me ask you one question, collateral question. In March, another panel of this Court remanded to the Board the merits attorney's fees issue. What's the status of that, procedural status of that remand right now? I am uncertain. I know it's been remanded to the Board. If that's something the Court is interested in, I can try to find that out. I was just wondering if the Board had decided. It has not decided, no. Okay. All right. Mr. Marks, three minutes. I'm not going to use them. I just want to say I think Judge Branch is on the right track. The ALJ excluded entire categories of time. He didn't pick and choose. He didn't say this is excessive and this wasn't excessive. That, to me, is an error of law and abuse of discretion. Also, at page 11 of the attorney fee order, the ALJ specifically found that these 13-hour days were not excessive or compensable.